UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LIGHT SOURCE, INC.,

    Plaintiff,

                                    Case No. 09-14268

                                    Paul D. Borman
                                    United States District Judge

v.

                                    Donald A. Scheer
DISPLAY DYNAMICS, INC.,                   United States Magistrate Judge

    Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FOR IMPROPER VENUE (DKT. NO. 7.)

       This matter is before the Court on Defendant Display Dynamic Inc.'s motion to dismiss for lack of personal jurisdiction and venue pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3). Plaintiff Light Source, Inc. has filed a response and the Court heard oral argument on June 3, 2010. For the reasons that follow, the Court DENIES Defendant's motion to dismiss.

**INTRODUCTION**

       Defendant Display Dynamics, Inc. ("DDI") brings this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and 12(b)(3) for improper venue. DDI claims that none of the events giving rise to the claims stated against DDI by Plaintiff Light Source, Inc. ("Light Source") in the instant Complaint occurred in Michigan and that, therefore, this Court cannot exercise personal jurisdiction over DDI. DDI also argues that, because this Court cannot exercise personal jurisdiction over it, venue is also improper in this District.

Light Source responds that DDI and Light Source had prior business dealings in Michigan which led DDI to solicit Light Source in Michigan for the work to be performed for DDI's customer in New York, and that as to the instant contract, DDI sent numerous purchase orders and emails to Light Source in Michigan, made numerous phone calls to Light Source and partially performed the contract by mailing partial payments to Light Source in Michigan. Light Source also responds that because this Court can properly exercise personal jurisdiction over DDI, and because a substantial part of the events giving rise to the claims in the Complaint occurred in this District, venue is proper in this District.

**I.      BACKGROUND**

The dispute in this matter centers around work that Light Source (a Michigan corporation with its principal place of business in Oakland County, Michigan) was solicited by DDI to perform, and agreed to perform, for DDI (an Ohio corporation with its principal place of business in Ohio) on a multi-million dollar museum restoration project in New York City on the floating *USS Intrepid* Museum. DDI is a designer of custom museum and trade show exhibits, providing structural and graphic design and production. Light Source is a full service lighting company that provides products and services across a broad spectrum of industries. Prior to the museum project that is the subject of the current dispute, DDI and Light Source worked together on the Charles H. Wright Museum of African American History in Detroit. (Pl.'s Resp. Ex. A, Affidavit of William R. O'Neill, ¶ 8.)

In 2007, DDI responded to a request for proposals for a comprehensive renovation and restoration of a museum located aboard the *USS Intrepid*. (Def.'s Mot. Ex. A, Affidavit of Veit Parker, ¶ 6.) The *USS Intrepid* was, and remained throughout the project, docked in New York,

2

New York. (*Id.* ¶ 7.) DDI was awarded the contract for the renovation project on or about February 2008. (*Id.* ¶ 8.) DDI contracted to fabricate the exhibits for the museum renovation that would be installed on the *USS Intrepid*. (*Id.* ¶ 10.)

DDI was familiar with Light Source based upon prior business dealings, including the African American museum project that DDI had worked on in Detroit, and solicited Light Source to provide services and goods for the museum project in New York. (Pl.'s Resp. Ex. A, O'Neill Aff. ¶¶ 4-8.) Light Source accepted DDI's solicitation and a contract was formed, under which DDI would submit purchase orders to Light Source in Michigan, Light Source would ship materials either to DDI in Ohio or directly to the museum project in New York, mail invoices to DDI in Ohio and DDI would submit payment to Light Source in Michigan. (Pl.'s Resp. Ex. A, O'Neill Aff. ¶ 11; Def.'s Mot. Ex. A, Parker Aff. ¶¶ 12-13.) Throughout the entire course of the business relationship, employees of DDI have been to Light Source's place of business in Michigan on numerous occasions. (Pl.'s Resp. Ex. A, O'Neill Aff. ¶ 9.)

For several months, DDI performed as set forth above under the contract but beginning in late 2008, stopped paying the amounts owed. These failures by DDI to make payment under the contract to Light Source form the basis of the instant lawsuit. (*Id.* ¶¶ 12-17.) As a result of the parties' business dealings, DDI has made numerous phone calls to Light Source in Michigan, and has sent numerous emails, purchase orders, letters and payments to Light Source in Michigan. (*Id.*)

In February, 2009, the Intrepid Museum Foundation filed a lawsuit against Defendant DDI in New York, alleging numerous failures to perform under their contract. (Def.'s Mot. Ex. A, Parker Aff. ¶ 14-15; Ex. B, New York Complaint.) Light Source is not a party to the New York lawsuit, and is not mentioned in the Foundation's Complaint, but DDI claims that the outstanding invoices that

Light Source seeks to collect in this lawsuit, which DDI does not deny owing to Light Source, are among the unpaid invoices that DDI seeks payment for on its counterclaim in the New York litigation. (Def.'s Mot. Ex. A, Parker Aff. ¶ 15.) The New York lawsuit is still pending. (*Id*. ¶ 14.)

Light Source has filed the instant lawsuit against DDI to collect on the unpaid invoices. Light Source states that the contract between it and DDI was not a "pay as paid" contract, which would only obligate DDI to pay Light Source when it received payment from the museum project. DDI does not appear to claim otherwise and concedes that the outstanding invoices Light Source seeks to collect in this lawsuit remain unpaid. (*Id*. ¶ 15.)

## II. ANALYSIS

### A. Standard of Review

Light Source bears the burden of establishing, in response to DDI's motion, that personal jurisdiction exists.[1] *Neogen Corp. v. Neo Gen Screening, Inc*., 282 F.3d 883, 887 (6th Cir. 2002). The Court has discretion to make a determination as to the existence of personal jurisdiction without an evidentiary hearing but plaintiff must, by affidavit, set forth specific facts demonstrating that the court has jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458-1459 (6th Cir. 1991). A court must consider the pleadings and affidavits submitted by the parties in the light most favorable to the plaintiff. *Id.* at 1458. Where there has been no evidentiary hearing, the plaintiff need only present a *prima facie* case in support of jurisdiction. *Id.* at 1458. "A federal court's exercise of personal jurisdiction in a diversity of citizenship case must be both (1) authorized by the law of the state in

---

[1] Light Source argues that this Court should exercise specific, as opposed to general jurisdiction, the latter involving the exercise of jurisdiction in a suit not arising out of or related to the defendant's contacts with the forum due to the defendant's "systematic and continuous" contacts with the forum. *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002).

4

which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment."
*Neogen*, 282 F.3d at 888.

B.     **Authorized by the Law of the Forum State – Michigan's Long Arm Statute**

Michigan law describes the circumstances by which a Michigan court can exercise limited personal jurisdiction over a corporation or its agents:

> The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:
>
> (1) The transaction of any business within [Michigan].
>
> (2) The doing or causing any act to be done, or consequences to occur, in [Michigan] resulting in an action for tort.
>
> (3) The ownership, use, possession or any real or tangible personal property situated within this state.
>
> (4) Contracting to insure any person, property, or risk located within this state at the time of contracting.
>
> (5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

Mich. Comp. Laws Ann. § 600.715.

The Sixth Circuit has recognized that the transaction of "any" business under MCL § 600.715(1) is established by the "slightest act of business in Michigan." *Lanier v. Am. Bd. of Endodontics,* 843 F.2d 901, 906 (6th Cir.1988) (citing *Sifers v. Horen,* 385 Mich. 195, 188 N.W.2d 623, 624 n. 2 (1971)). "Neither the presence of the defendant in the state, nor the actual contract formation need take place in the forum state for the defendant to do business in that state." *Lanier*, 843 F.3d at 907. In *Lanier*, defendant's correspondence and telephone calls with the Michigan

5

plaintiff, and its acceptance of payment from the plaintiff, satisfied the "any business" standard. The Sixth Circuit has recently reaffirmed the expansive reach of Michigan's long arm statute to the "full potential" of personal jurisdiction, with just the "slightest act of business in Michigan" satisfying the statute. *Citizens Bank v. Parnes*, No. 09-1306, Slip Op. at 7 (6th Cir. May 4, 2010) (unpublished). "[The Michigan long arm statute] is intended to be liberally construed in favor of recognizing limited personal jurisdiction especially where an ordinary commercial transaction is involved, absent violation of due process of law." *Id.*

Here, DDI solicited Light Source to perform services for DDI on the museum project, sent telephone and electronic communications to Light Source in Michigan in furtherance of contract, sent numerous purchase orders to Light Source in Michigan and partially performed the contract by mailing payments to Light Source in Michigan. The Court finds that these activities, all of which arise out of the contract that is the subject of the instant lawsuit, satisfy the "slightest act of doing business" requirement. In addition, the parties had a significant history of doing business in Michigan on a Michigan project. Accordingly, the Court finds that Michigan's long-arm statute covers DDI's conduct.

**C.     In Accordance with Due Process**

Although authorized by the Michigan long-arm statute, the exercise of personal jurisdiction over DDI must still be in accord with the due process clause of the Fourteenth Amendment. "The due process clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-472 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). "By requiring that individuals have fair warning that a

particular activity may subject [them] to the jurisdiction of a foreign sovereign, the Due Process clause gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Burger King*, 471 U.S. at 472 (internal quotation marks and citations omitted). Where a defendant "purposefully directs" his activities at residents of the forum state, that state has an interest in protecting its residents by "providing [them] with a convenient forum for redressing injuries inflicted by out-of-state actors." *Id.* at 473. Where such purposeful conduct has occurred, the defendant can be assured that he will not be haled into a jurisdiction "solely as the result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Id.* at 475 (internal quotation marks and citations omitted). "[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Id.* at 474 (quoting *Int'l Shoe*, 326 U.S. at 316).

The Sixth Circuit utilizes a three-part test for determining whether the exercise of specific personal jurisdiction over an out-of-state defendant comports with due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co. v. Mohasco Ind., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

1. **"Purposeful Availment"**

This Court may not exercise personal jurisdiction over DDI unless DDI has purposefully entered into a connection within Michigan "such that [it] should reasonably anticipate being haled into court [in Michigan]." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

The Sixth Circuit discussed the purposeful availment prong in *Air Products and Controls, Inc. v. Safetech Int'l, Inc*., 503 F.3d 544 (6th Cir. 2008). *Air Products* involved an interstate contract between plaintiff Air Products, a Delaware company headquartered in Michigan, and defendant Safetech, a Kansas corporation. *Id*. at 548. Safetech opened a credit account with Air Products and over the course of a number of years, Safetech purchased goods on credit from Air Products, submitting hundreds of orders by phone, fax, email and regular mail. *Id.* The goods were shipped by Air Products either to Safetech in Kansas or directly to Safetech's customers. *Id.* After several years, Safetech began failing to make payments to Air Products and litigation ensued in the United States District Court in Kansas. *Id*. The district court entered judgment in favor of Air Products but Air Products was never able to collect from Safetech, who allegedly was without funds to satisfy the judgment. Air Products later learned that Safetech had transferred assets that should have been used to pay the Air Products judgment and Air Products filed suit against Safetech in state court in Michigan alleging fraudulent transfer. *Id*. at 549. Safetech removed to this District and moved to dismiss for lack of personal jurisdiction.

First finding jurisdiction under Michigan's long-arm statute, the Sixth Circuit next analyzed the due process implications of exercising jurisdiction over Safetech, discussing at length the "puposeful availment" prong of the minimum contacts constitutional analysis:

> With respect to interstate contractual obligations, the Supreme Court has emphasized that parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" are subject to regulation and sanctions for the consequences of their activities. . . . In this case, the parties did not engage in a one-time transaction, but in a continuing business relationship that lasted a period of many years. Defendants reached out beyond Kansas' borders to conduct business with a company whose principal place of business it knew to be in Michigan. Such contacts are not "random" or "fortuitous" or "attenuated," but are the result of deliberate conduct that amounts to purposeful availment.

8

503 F.3d at 551 (quoting *Burger King*, *supra* at 473, 478-479).

Acknowledging that the contacts between Air Products and Safetech over the years were admittedly "numerous," the court cautioned that a "numerical count of the calls and letters has no talismanic significance," and focused instead on the quality of those contacts. *Id.* at 551 (quoting *LAK Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1301 (6th Cir. 1989)). Recognizing that a defendant's contacts "lack quality when they are initiated by the plaintiff rather than the defendant, in part because the unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum," the court found the opposite to be the case with Safetch. *Id*. at 552 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)). Focusing on Safetech's numerous telephone, email, fax and regular mail contacts with Air Products over the course of the parties' contractual dealings, most of which were initiated by Safetech's placement of orders with Air Products, the court concluded that these contacts were not "simply the result of unilateral activity on the Air Products" but were initiated by Safetech with a known Michigan-based company in furtherance of the parties' business relationship. *Id*. at 551-552.

This Court is persuaded that DDI's overt solicitation of Light Source, a company known by DDI from prior business dealings to have been located in Michigan, specifically to provide goods and services for the *USS Intrepid* museum project, and the multitude of orders placed by DDI with Light Source in Michigan, followed by multiple emails, faxes and letters in furtherance of that contractual relationship, are of a quality, regardless of quantity, to satisfy the *Burger King* purposeful availment requirement. While DDI relies heavily on the Sixth Circuit's opinion in *Calphalon Corp. v. Rowlette*, 228 F.3d 718 (6th Cir. 2000), Light Source correctly observes that several courts, along with the

9

dissent in *Calphalon*, have had difficulty reconciling *Calphalon* with controlling Supreme Court precedent. *Cf. Frankenmuth Mutual Ins. Co. v. Appalachian Underwriters, Inc.*, No. 03-10193, 2004 WL 1406121 at * 9 (E.D. Mich. June 21, 2004) (unpublished) ("This Court finds it difficult to reconcile the holding in *Calphalon* with the Supreme Court's pronouncements in *Burger King*."). Calphalon, an Ohio corporation, engaged defendant Rowlette, a Minnesota resident, as its exclusive manufacturer's representative for its products in five states, none of which was Ohio. 228 F.3d at 720. During the course of the relationship, Rowlette corresponded with Calphalon in Ohio via email, fax and telephone. When Calphalon announced that it was not going to renew Rowlette's agreement, Rowlette expressed its intent to seek damages for breach of contract and unpaid commissions. *Id*. at 720-721. Calphalon filed suit in the United States District Court in Ohio seeking a declaratory judgment that it owed Rowlette nothing under the terms of the agreement. *Id.* at 721. Rowlette moved to dismiss the Ohio action, alleging lack of personal jurisdiction. The court granted the motion to dismiss, finding that Rowlette's contacts with Ohio were too random, fortuitous and attenuated. *Id*. at 723.

In *Frankenmuth, supra*, Judge Lawson questioned the *Calphalon* holding, ultimately distinguishing the case on grounds that this Court finds also applicable here:

> If there is a distinction to be made between the critical facts in *Calphalon* and *Burger King*, it perhaps can be derived from the absence of any activity by Rowlette himself directed into the forum state. For all that can be determined from the opinion in that case, it appears that Rowlette simply arranged sales in other states and reported on market conditions there. He never remitted payment for any goods to Calphalon's headquarters, nor did he "reach out beyond" Minnesota for the purpose of deriving the benefit of affiliating with a "nationwide organization," as did John Rudzewicz in the *Burger King* case. Moreover, the lawsuit in that case was a declaratory judgment action in which Calphalon sought a ruling that it owed nothing to Rowlette, not that Rowlette had damaged Calphalon.

2004 WL 1406121 at * 9.

Similarly in the instant matter, DDI's conduct in remitting payments to and placing multiple orders directly with Light Source in Michigan, and ultimately breaching the contract and damaging Light Source in Michigan, qualitatively differs from the contacts at issue in *Calphalon*. Additionally, it is not clear from the court's opinion in *Calphalon* which party actually initiated the relationship, a factor which weighs heavily in favor of asserting jurisdiction over DDI in this case. DDI unquestionably "reached out" to Light Source in Michigan in the first instance, based upon the parties' prior dealings which at least in part had occurred in the state of Michigan, and continued throughout the relationship to reach out to Light Source in Michigan in furtherance of the parties' contractual relationship. *See Tharo Systems, Inc. v. cab Produkttechnik GmbH & Co.*, 196 F. App'x 366, 371 (2006) (distinguishing *Calphalon* where there was no mention that Rowlette "reached out" to Ohio to negotiate with Calphalon).[2] Finally, Light Source's promissory estoppel claim is based entirely on DDI's repeated assurances that payment was forthcoming and that Light Source should continue performing under the contract, which Light Source did. Surely, based upon these contacts, DDI had "fair warning" that these activities, specifically directed toward Light Source in Michigan, if injurious to Light Source, might require DDI to come to Michigan to answer for its conduct. Certainly, in such an instance, Michigan has an interest in providing Light Source with a forum to attempt to redress these wrongs. This is all that traditional notions of justice and fair play require.

---

[2] For this reason, the Court also finds *Kerry Steel, Inc. v. Paragon Ind., Inc.*, 106 F.3d 147 (6th Cir. 1997), relied on by Defendant, distinguishable, because the plaintiff there reached out to the defendant in the first instance, with an unsolicited offer to sell $300,000 dollars worth of steel coil. "Paragon, in response to an unsolicited sales call, ordered products from a Michigan seller and negotiated with the seller via fax and telephone to finalize the transaction. This does not constitute a purposeful availment of the privilege of transacting business in Michigan, so as to invoke the benefits and protections of Michigan law." *Id.* at 152. Light Source did not solicit DDI. DDI actively reached out to Light Source in Michigan, making contact with Michigan not fortuitous or random but planned and predictable.

### 2. "Arising From"

The arising from prong of the *Southern Machine* test is satisfied if "a defendant's contacts with the forum state are related to the operative facts of the controversy." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996). DDI disputes the "arising from" prong, arguing that the failure to pay occurred in Ohio and was a result of the museum foundation's failure to pay, which occurred in New York. This argument ignores several of the important "contacts" highlighted by Light Source and presents a questionable assertion on the location of the "failure to pay," which Light Source no doubt would argue occurred in Michigan. The Court finds that there is no real dispute that the controversy between DDI and Light Source is related to the purchase orders, partial payments and other contacts that DDI initiated here in Michigan. DDI "reached out" to Light Source to create the contractual obligations that are at the heart of the parties' dispute.

### 3. "Reasonableness"

"[W]here, as here, the first two criterion [of *Southern Machine*] are met, 'an inference of reasonableness arises' and 'only the unusual case will not meet this third criteria.'" *Air Products,* 503 F.3d at 554 (quoting *Theunissen*, 935 F.2d at 1461). In determining reasonableness, the court should consider: 1) the burden on the defendant; 2) the interest of the forum state; 3) the plaintiff's interest in obtaining the relief sought; 4) another state's interest in securing resolution of the matter. *Air Products*, 503 F.3d at 554-555.

In this case, DDI is actually physically located closer to Michigan than to New York, where it argues this dispute should be resolved. Light Source states that DDI's facility is located 150 miles from Detroit. The Court finds the burden on the Defendant to be minimal. Michigan, on the other hand, has a significant interest in providing a forum for its resident, Light Source, who is seeking to

recover monies that DDI does not deny that it owes. Finally, New York has no interest in settling the dispute between DDI and Light Source, the latter having nothing to do with the dispute between DDI and the museum foundation in New York. (*See* Def.'s Mot. Ex. C, New York Complaint.) DDI's only argument as to reasonableness is that it lacks the requisite contacts with Michigan to justify an exercise of jurisdiction. But the Court has already ruled otherwise on the issue of purposeful availment. DDI has not overcome the strong inference of reasonableness which flows from satisfaction of the two prongs of the *Southern Machine* due process test.

The Court finds that it is reasonable to exercise personal jurisdiction over DDI in this case. Light Source has presented a *prima facie* case that Michigan's long-arm statute applies to DDI and that exercising personal jurisdiction over DDI comports with the requirements of due process. In addition, the Court notes that DDI had extended business contacts with Light Source in Michigan, on a project in Michigan, to wit, the Charles H. Wright Museum of African American History in Detroit.

**D.    Venue**

DDI argues that, for the same reasons that personal jurisdiction is not proper in this District, neither is venue. 28 U.S.C. § 1391 requires only that a "substantial part" of the events or omissions giving rise to the claim have occurred in the forum district. "Plaintiff may file his complaint in any forum where a substantial part of the events or omissions giving rise to the claim arose; this includes any forum with a substantial connection to plaintiff's claim." *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 263-264 (6th Cir. 1998). As the Sixth Circuit explained in *Bramlet*:

> The fact that substantial activities took place in district B does not disqualify district A as proper venue as long as "substantial" activities took place in A, too. Indeed, district A should not be disqualified even if it is shown that the activities in district B were more substantial, or even the most substantial. Any other approach would

13

restore the pinpointing problem that created the difficulties under the now discarded "claim arose" standard. If the selected district's contacts are "substantial," it should make no difference that another's are more so, or the most so.

141 F.3d at 263 (quoting David D. Siegel, Commentary on the 1988 and 1990 Revisions of Section 1391, Subdivision (a), Clause (2), 28 U.S.C.A. § 1391 (1993)). *See also Sulzer Intermedics, Inc. v. Born*, No. 97-74836, 1998 U.S. Dist. LEXIS 7111 at * 16 (E.D. Mich. April 13, 1998) ("If a plaintiff shows that a substantial part of the events occurred in the district, venue will be proper in that district despite the fact that a greater part of the events occurred elsewhere."

Light Source makes out a *prima facie* case establishing significant contacts between the present controversy and the State of Michigan. It matters not that there may also be substantial contacts to be found in Ohio or New York, the latter seeming to the Court a particularly odd choice given the distance that both DDI and Light Source would have to travel to litigate this matter there. The contract was formed in Michigan and DDI was to perform by mailing payment to Michigan, which admittedly it has not done. The Court concludes that a substantial part of the events giving rise to this dispute, i.e. the initial solicitation of Light Source by DDI, the multiple purchase orders sent by DDI to Light Source in Michigan, the fabrication of the materials, the numerous emails, faxes, letters and telephone calls which were sent to Michigan in furtherance of the parties' contractual obligations over a significant period of time (2004-2009), took place in this District and that venue is proper in this Court.[3]

---

[3] At the hearing on June 3, 2010, counsel for DDI argued to the Court that there will be issues relating to quality of work and scope of work in the dispute between Light Source and DDI and that these issues are centered in New York where the work was done. There was no mention of these issues in any of DDI's motion papers or supporting affidavit and the Court declines to consider counsel's argument. The Court notes that at the hearing, counsel for Light Source represented to the Court that DDI has never insinuated that there was an issue as to the work or services provided by Light Source on the museum project. The only issue discussed between the parties, according

14

## IV.   CONCLUSION

For the foregoing reasons, the Court DENIES DDI's motion to dismiss for lack of personal jurisdiction and for improper venue (Dkt. No. 7).

IT IS SO ORDERED.


                                          S/Paul D. Borman
                                          PAUL D. BORMAN
                                          UNITED STATES DISTRICT JUDGE

Dated:  June 8, 2010

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on June 8, 2010.


                                          S/Denise Goodine
                                          Case Manager

---

to counsel for Light Source, has been DDI's failure to pay Light Source, which DDI has attributed solely to the failure of the museum project to make final payment to DDI.